In the Matter of NEW WORLD INNS, INC., Bankrupt.

Homer A. BONHIVER, Trustee in Bankruptcy of New World Inns, Inc., Appellee,

v.

PEOPLES BANK OF TRENTON, a Michigan bank corporation, Appellant.

No. 76–1885.

United States Court of Appeals, Eighth Circuit.

Submitted March 17, 1977.

Decided May 24, 1977.

Ronald H. Groth (argued), and Thomas G. Lovett, Jr., Minneapolis, Minn., on appendices and briefs, for appellant.

William Z. Pentelovitch (argued), and Hyman Edelman, Minneapolis, Minn., on briefs, for appellee.

Before GIBSON, Chief Judge, and WEBSTER and HENLEY, Circuit Judges.

HENLEY, Circuit Judge.

This is an appeal by defendant, Peoples Bank of Trenton, a banking institution

chartered under the laws of the State of Michigan, from an order of the United States District Court for the District of Minnesota, sitting in bankruptcy (The Honorable Donald D. Alsop, United States District Judge; The Honorable Hartley Nordin, Bankruptcy Judge), directing the Bank to turn over to Homer A. Bonhiver, Trustee in Bankruptcy of New World Inns, Inc. (NWI), the sum of $31,281.00 which the Bank had appropriated from three checking accounts of NWI in satisfaction of an obligation that the Bank claimed was due to it from NWI. The controversy was litigated in the bankruptcy court without objection. The bankruptcy judge found in favor of the Trustee, and his action was upheld by the district judge on appeal.

It was held in the district court that the debt in connection with which the Bank appropriated NWI's deposits was not the obligation of NWI, and that the Bank had no right to take the money. That holding is assigned as error. The defendant contends further that the district court erred in excluding certain evidence offered at the hearing before the bankruptcy judge, and that it was error to hold the Bank liable for expenses of litigation and an attorney's fee.

NWI was formed as a Minnesota corporation and at all pertinent times was a wholly owned subsidiary of another Minnesota corporation, Investors Dynamics Corporation (IDC). IDC was controlled by George W. Heaton who was president of both corporations for a number of years. Although NWI was a subsidiary of IDC, and though Heaton seems to have been the dominant figure in both corporations, the district court found that the two corporations were separate entities and that one corporation was not the alter ego of the other.

The business of IDC was the acquisition and ownership of business real estate, including motel properties; it was not an operating company. NWI, on the other hand, was an operating company engaged in leasing and operating motels in a number of states, including Michigan. Its headquarters were in Minnesota.

Prior to September, 1973 a limited partnership in which IDC was the limited partner acquired ownership of the Sheraton Motor Inn at Woodhaven, Michigan, and leased it to NWI. The manager of Sheraton Motor Inn, hereinafter "the motel", was Michael Rogula. In connection with the operation of the motel NWI maintained three bank accounts with the defendant Bank. When those accounts were opened, Heaton was still president of both corporations, and the Bank's records showed him as being president in the month just mentioned, although he had in fact ceased to hold that office. He never ceased to be president of IDC. Heaton was not personally acquainted with the personnel of the Bank prior to September 14, 1973.

On that date Heaton and Rogula appeared at the Bank, and Rogula introduced Heaton to Gordon Meyers, an officer of the Bank. Heaton stated to Meyers that IDC wanted to borrow $30,000.00 from the Bank with the proceeds to be used to remodel the motel. It will be recalled that the motel was owned by the partnership which included IDC; it was not owned by NWI.

After some discussion, the loan was made to IDC with Heaton signing the note as guarantor. The note evidencing the loan made no reference to NWI and was not signed by anyone on behalf of NWI. The note bore interest at the rate of 8.5% per annum and was due and payable in six months; it was unsecured.

Although Heaton had requested that the proceeds of the loan be disbursed by means of a check in favor of IDC, the proceeds were in fact deposited in one of the accounts maintained by NWI. However, on the following day $30,000.00 was drawn out of that account by means of a check that was mailed to a bank in St. Paul, Minnesota, and the proceeds of the check were credited to IDC.

Between September 14, 1973 and February 11, 1974 NWI continued to do business with the Bank. No payments were made on the IDC note which would have fallen due on March 14, 1974.

On February 11, 1974 both NWI and IDC filed petitions in the federal district court in Minnesota for arrangements with creditors under Chapter XI of the Bankruptcy Act, 11 U.S.C. §§ 701 *et seq.* Initially, NWI was permitted to occupy the status of a debtor in possession; later, the plaintiff Bonhiver was named receiver but with limited authority. By May 6, 1974 the Chapter XI proceedings of both corporations had turned out to be fruitless, and both corporations were adjudicated bankrupts and became subject to the straight bankruptcy provisions of Chapter VII of the Act, 11 U.S.C. §§ 101 *et seq.* Bonhiver became trustee of the estate of NWI.[1]

When NWI's petition under Chapter XI was filed on February 11, 1974, all of NWI's property, wherever located, passed into the constructive possession of the bankruptcy court. 11 U.S.C. § 711. On February 12, the bankruptcy judge took cognizance of the pendency of the proceedings and entered an order recognizing the status of NWI as debtor in possession; the bankruptcy judge also entered an order designed to protect the assets of NWI from outside interference. *See* 11 U.S.C. § 714.

By February 12 or 13, 1974 the Bank had become aware of the commencement of the Chapter XI proceedings in Minnesota and was aware of the fact that those proceedings might adversely affect it with respect to the $30,000.00 loan that had been made the preceding September. IDC had no money on deposit with the Bank, but the three NWI accounts with the Bank were still viable and active.

At this stage the Bank took the position that the $30,000.00 loan in question had actually been made to NWI and not to IDC, and without authority from any source, including the bankruptcy court, proceeded on February 13, 14 and 15 to debit the NWI accounts to the extent of the credit balances therein which totalled $31,281.00.

In due course the Trustee demanded that the Bank turn this money over to him, and when the Bank refused to do so the Trustee filed his complaint in the bankruptcy court alleging that the action of the Bank in taking over the funds of NWI was wrongful.

In its answer to the complaint the Bank alleged that the loan had actually been made to NWI, and that under § 68 of the Bankruptcy Act, 11 U.S.C. § 108, it was entitled to set off against its obligations to its depositor the alleged debt of the depositor to it. The claim that the loan was made to NWI was based on the proposition that NWI was an alter ego of IDC or that if it was not, Heaton had fraudulently represented to the Bank that the two corporations were one and the same entity, and that the proceeds of the loan were to be used to remodel the motel.

On February 13, 1976 the bankruptcy judge filed findings of fact and conclusions of law, and he also filed a memorandum opinion setting out his views.

In Conclusion of Law No. 2 the bankruptcy judge stated that on the date of the filing of the Chapter XI petition NWI was not a debtor of the Bank, and that the Bank, on the other hand, was indebted to NWI. Thus, there was an absence of mutual or reciprocal obligations which would have entitled the Bank to the benefits of § 68 of the Act.

With regard to the identity of the borrower the bankruptcy judge in his memorandum opinion said, among other things:

> The record is abundantly clear that the bankrupt was not the borrower, nor the guarantor of the bank loan. Bankrupt's name does not appear on the note or on the application. The bank's claim as a creditor of this bankrupt seems to rest only on the fact that the loan proceeds for a brief period of time were deposited in bankrupt's account. It is undisputed that on the next business day the loan proceeds were transferred to the account of the borrower, Investment Dynamics Corporation. The bankrupt's bank account was thus merely a conduit by

---

1. We are not here concerned with the abortive Chapter XI proceeding of IDC or with the later bankruptcy proceedings involving that company.

which the proceeds of the bank's loan to Investors Dynamics Corporation were transmitted to the borrower. Significantly, the conduit was apparently chosen by the Bank. Heaton had asked for a check payable to Investment Dynamics Corporation to take to the Minneapolis home office. (Trustee Ex. A. p. 19) Apparently Heaton left before the loan was approved as he was in a hurry. (Trustee Ex. A. pp. 37, 70) It is also undisputed that the money was not used to renovate the motel leased to the bankrupt. The bankrupt and its creditors gained no financial benefit from this loan.

Improvement of the premises, had it occurred, would have inured to the benefit of its ownership, that is, Investors Dynamics Corporation and the limited partnership, as purchasers under the contract, and the Ragulo (sic) associates, as fee owners and sellers under the contract.

And the bankruptcy judge also said:

If the bankrupt depositor was a debtor of the bank, it was not as maker of the note, it was not as a user or beneficiary of the loan proceeds. The bank claims the bankrupt as its debtor only because the bankrupt is said to be one and the same person as Investment Dynamics Corporation, the bank's borrower. The record does not support the bank's contention.

Mr. Meyer (sic), vice president and loan officer of the bank, at the time of the loan understood that New World Inns was a functioning separate corporation, that it operated a number of motels, including the Sheraton Motel, as lessee of limited partnerships. He knew that Investment Dynamics Corporation and New World Inns, Inc. each had different businesses and as a necessary consequence, different customers and, most important, —different trade creditors. He knew that New World Inns, Inc. then had assets in deposits in his own bank from the receivables continuously generated from its operation of the local motel. (Trustee Ex. A. pp. 30–32)

The bank may suffer from Heaton's apparent misrepresentation. The bank, however, suffers because of its own haste and carelessness. The bank did not ask for an audit statement from its borrower or its guarantor. The bank did not check with the accountants who were said to have prepared the unsigned corporate financial statement. The bank had no need to rush into this loan. The bank did not demand a corporate authorization of the bankrupt. The bank did not demand the guarantee of the bankrupt. The bank did not demand a security interest in or pledge of the bankrupt's assets. It is difficult to see why the bank should now be permitted to repay itself out of the bankrupt's assets to the detriment of the bankrupt's creditors.

In affirming the bankruptcy judge on appeal the district judge had this to say about the identity of the borrower:

The Bank asserts that it was entitled to set off the sum of $31,281.00 against three accounts of New World Inns, Inc. (hereinafter NWI) pursuant to Section 68 of the Bankruptcy Act, 11 U.S.C. § 108. However, the record is abundantly clear that the bankrupt is not the borrower nor the guarantor of the bank note, nor is NWI liable to the Bank for the underlying obligation. The Bank has failed to convince the court that there is any basis in law or in fact for its assertion that NWI is the alter ego of IDC or that by depositing the proceeds of the IDC loan into its account for one day, NWI became liable to the Bank for the underlying obligation. Thus, the requisite mutuality necessary to justify an off set under Section 68 does not exist. Therefore, the Bankruptcy Judge's Order that judgment be entered in favor of plaintiff will be affirmed.

█ We can add nothing of value to the statements above quoted. We are satisfied that the findings of the bankruptcy judge and of the district judge to the effect that the loan was made to IDC and not to NWI

were adequately supported by the evidence and were not clearly erroneous.[2]

■ The Bank argues that error was committed when the bankruptcy judge refused to receive evidence offered by the Bank to prove that at about the same time as that at which Heaton induced the Bank to make the loan involved in this case, he fraudulently induced a number of other banks to make similar loans to IDC, and that this evidence would have shown an over-all scheme to defraud.

Judge Alsop dealt with that argument as follows:

Finally, the Bank contends that evidence of the activities of Mr. Heaton, the guarantor of the note in question, in obtaining loans of $325,000.00 from eleven other banks at or near the time in question here was improperly excluded at trial. Apparently the Bank offered this evidence for the purpose of supporting its contention that there was a scheme to obtain money by false representations. But "each note was made by Investment Dynamics Corporation signed by Heaton as its president and person [sic] guaranteed by Heaton." Appellant's Brief at 11. Consequently, Mr. Heaton and IDC would be the parties responsible for any scheme to defraud, if indeed there was one. At the time Mr. Heaton was dealing with the defendant, he made it clear to the Bank that he was acting on behalf of IDC, and only IDC, and that he had no authority to borrow money on behalf of NWI. Thus, it was correct for the Bankruptcy Judge to exclude as irrelevant in NWI's bankruptcy proceeding, evidence of alleged fraud on the part of Mr. Heaton and IDC.

We agree with the district judge. At most, that evidence might have shown that Heaton was using IDC to defraud banks including the defendant; but it did not show that the loan in question was made to NWI, which was the controlling issue in the case.

■ There remains for consideration the question of whether the district court erred in allowing the Trustee to recover from the Bank expenses of litigation and an attorney's fee. The bankruptcy judge did not discuss this phase of the case in his findings and conclusions or in his memorandum opinion. He simply held the Bank liable for expenses and fee with amounts to be determined later. In the course of the argument before us it developed that counsel for the Trustee is thinking in terms of a very large fee running into several thousand dollars.

In upholding the bankruptcy judge's award, Judge Alsop cited and relied primarily on *In re Swofford,* 112 F.Supp. 893 (D.Minn.1952). The district judge also cited *Preferred Surfacing, Inc. v. Gwinnett Bank & Trust Co.,* 400 F.Supp. 280 (N.D.Ga.1975).

In *Gwinnett, supra,* which arose in the context of a Chapter XI proceeding, the bank involved had effected an improper set-off and was adjudged in civil contempt of the bankruptcy court. In order to purge itself of its contempt the bank was required to place the amount of the deposit in a trust account in the name of the debtor, and if it failed to do so, it was to be penalized in the sum of $200.00. 400 F.Supp. at 282.

In his thorough opinion in *Swofford, supra,* Judge Nordbye held that even in the absence of a statute authorizing an award of an attorney's fee in favor of a trustee in bankruptcy, the bankruptcy court in a proper case may, in the exercise of its discretion, award a fee. However, it was pointed out that such an allowance will not generally be made in an ordinary case, and that bankruptcy courts are reluctant to tax losing litigants with fees.

The facts in *Swofford* were simple. When Swofford filed a petition in bankruptcy he had a one-ton truck in his possession which he had purchased under a conditional sales contract held by a finance company. Swofford's equity in the truck was only $25.00. With full knowledge of the

---

**2.** The entire argument of the Bank that it was entitled to a set off is premised on the proposition that the loan was in fact made to NWI.

Since that premise has failed, other aspects of the argument need not be considered.

bankruptcy proceeding, the finance company repossessed the truck and refused to turn it over to the trustee who was forced to bring action to obtain possession of the vehicle. The referee in bankruptcy assessed costs against the finance company including a $75.00 attorney's fee. 112 F.Supp. at 894. Judge Nordbye held that in the circumstances of the case the award was proper. And he observed that if the trustee had not been able to recover the expenses of the litigation, including attorney's fee, it would not have been worthwhile for the trustee to endeavor to recover the truck. 112 F.Supp. at 897.

The instant case differs markedly from *Swofford.* Although the Bank's claim of set off turned out to be ill-founded, it was not without substance. There is nothing to indicate that the Bank was acting with any intent to interfere contumaciously with the jurisdiction of the bankruptcy court, or that out of mere stubbornness it determined to cause the Trustee all the trouble possible in connection with his recovery of the money. Nor does this case involve an asset with respect to which the equity of the debtor or bankrupt is less than the legal expenses that would have to be incurred by the Trustee in connection with the recovery of the asset for the benefit of the estate. Here, the Trustee is recovering the full amount of the money that the Bank appropriated.

We recognize that the question of whether the Bank should be taxed with litigation expenses and an attorney's fee addressed itself to the discretion of the district court. Nevertheless, we feel constrained to hold that the awards should not have been made.

To the extent that the order of the district court allowed litigation expenses and an attorney's fee, it is reversed. In all other respects, it is affirmed.

Affirmed in part, reversed in part.